## Buntz's Registration.

E. H. Dysher, for petitioner and rule; C. W. Matten, contra.

MAYS, J., Sept. 11, 1929.—The petitioner filed his petition on Aug. 30, 1929, averring that he is a resident of the North Ward of the Borough of Hamburg; that he had paid a county tax and is in all respects qualified to register as a voter; that he has been a Republican all his life, and has voted the Repub-

lican ticket, but seldom at primary elections; that Robert Rupp is the registry assessor, and has caused the petitioner to be registered as a Prohibitionist, and after having done so made return thereof to the County Commissioners of Berks County; that the assessor did not interview the petitioner, or ascertain from him, or at his residence, what was his political affiliation; that the petitioner quite recently was informed that he is registered as a Prohibitionist, whereupon he called upon the assessor and requested him to correct the registration so as to designate the petitioner as a Republican; that the original registry list, at the time of said application, had been returned by the assessor to the county commissioners' office; that the petitioner called on the county commissioners and requested them to correct what is alleged to be an error, and to cause the petitioner to be registered as a Republican instead of a Prohibitionist, which request was refused; and that the petitioner, unless the requested change be made, will be deprived of his constitutional rights as a voter.

A rule was granted, returnable Sept. 3, 1929. The answer, amongst other things, denies that the petitioner will be deprived of his constitutional rights as a voter, averring that he was under the law regularly registered and enrolled as a Prohibitionist for a period of ten years, and that it became his duty to notify or request the registry assessor to change his party affiliation, if he desired to have it changed, at any time prior to or on the 62nd or 63rd day preceding the primary election.

Upon the return-day a hearing was had and the testimony of the petitioner and of Robert Rupp, the assessor, was taken. From a reading of it, it appears that the assessor did not visit the home of the petitioner to inquire of him what his political affiliation was, and no declaration blank was left with him; that the petitioner was registered as being affiliated with the Prohibition Party because the registry books of the assessor's predecessor in office disclosed that his political affiliation was that of a Prohibitionist; that the assessor, on the two consecutive days next preceding the 61st day before the Tuesday next following the first Monday in November, was sitting (notice of which appeared in the Reading Eagle and a Hamburg paper) at his home opposite the polling place for the purpose of hearing applications in regard to the assessment list; that the original registry books were returned to the county commissioners; and that no demand was made upon the assessor on said two consecutive days to have a change made, nor until a few days prior to the filing of the petition. The petitioner gave no thought to the matter of appearing before the registry assessor to request a change, and the application would not have been made at the time it was were it not for the fact that he is a candidate for tax collector on the Republican ticket, and but for that fact he "would have never thought of anything like this; that is the only thing that brings me here." The only time the petitioner voted at a primary was many years ago when he declared himself to be a member of the Prohibition Party.

For a discussion of what is the machinery for assessing voters for the purpose of qualifying them to exercise the right to vote we refer to Butler's Petition, 30 Dist. R. 422. There is no question but that the Court of Common Pleas has the authority to order the assessor to correct the registry list; but it should only be done where it is manifest that law and justice so demand.

It was contended at the argument that the petitioner is entitled to the change prayed for because there was a failure on the part of the assessor to do his duty. Even though we should decide that the testimony discloses a failure on the part of the assessor to do his duty, this in itself is not sufficient

to justify us in granting the prayer of the petition. It is only in the event that there is a mistake, or a breach or wilful neglect of duty on the part of the assessor, and no failure or neglect on the part of the petitioner, that the court should permit itself to act in applications of this kind. The facts here impel us to the conclusion that the voter, petitioner here, did not take the trouble within the required time to have the change made, and, as was said in Applications to Add Names to the Assessor's Registry List, 16 Phila. 481, "the default or neglect is as much the voter's as it is the assessor's. It was not the intention of the Legislature to permit a voter to impute his own default as a breach of duty by the assessor." Where the assessor fails to perform his duty the law provides a penalty for his fraud or misconduct. It is true that a citizen possessing the requisite qualifications should not be deprived of his vote, or of the right to vote, at a primary the ticket of his party; but as was said in Re Registration of Solo, 20 Dist. R. 553, "the policy which makes his competent registration a prerequisite to voting ought not to be frittered away because of hard cases."

And now, to wit, Sept. 11, 1929, the rule to show cause is discharged.

From Charles K. Derr, Reading, Pa.